[Cite as *State v. Clark*, 2012-Ohio-4776.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
|  | : | W. Scott Gwin, P.J. |
|  | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 2011CA017 |
|  | : |  |
|  | : |  |
| MELISSA CLARK | : | O P I N I O N |
|  |  |  |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:        Criminal Appeal from Coshocton Municipal Court Case No. CRB 1100149(A)

JUDGMENT:        Affirmed

DATE OF JUDGMENT ENTRY:        October 5, 2012

APPEARANCES:

For Plaintiff-Appellee                        For Defendant-Appellant

CHRISTIE M. L. NELSON               JEFFREY G. KELLOGG
Assistant Law Director                  Assistant Public Defender,
760 Chestnut Street                    Coshocton County
Coshocton, Ohio 43812             239 North Fourth Street
                                       Coshocton, Ohio 43812

*Edwards, J.*

**{¶1}** Defendant-appellant, Melissa Clark, appeals her conviction and sentence from the Coshocton Municipal Court on one count of child endangering. Plaintiff-appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶2}** On March 28, 2011, a complaint was filed alleging that appellant had committed the offense of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. On the same date, a complaint was filed alleging that appellant had committed the offense of child endangering in violation of R.C. 2919.22(A), also a misdemeanor of the first degree. At her arraignment on March 31, 2011, appellant entered a plea of not guilty to the charges.

**{¶3}** Thereafter, a bench trial commenced on October 26, 2011. At the trial, Sergeant Eric Demattio of the Coshocton County Sheriff's Office testified that, on March 19, 2011, he responded to a call about a domestic incident between a mother and daughter. When he arrived at appellant's home, he observed appellant on top of her daughter restraining her. The room was "a little disheveled" and a window was broken. Transcript at 6. According to Sergeant Demattio, appellant told them that she had attempted to give her daughter, who was hitting and biting appellant, pills to calm her down. The Sergeant testified that "[s]he got on top of her [daughter] to restrain her and tried to give her pills and put pills in her mouth." Transcript at 7. Appellant told the officers that the pills were her prescription pills for Ativan. The officers ordered appellant to get off of her daughter, who was screaming and trying to get up.

{¶4}  Appellant's daughter, Brianna, was arrested for domestic violence and appellant also was charged with domestic violence. Both had injuries. Appellant was later charged with child endangering.

{¶5}  Brianna Clark, appellant's daughter, testified that she was 13 years old. After reviewing the written statement that she gave on the night in question, Brianna testified that she had a friend spend the night on March 19, 2011 and that the friend sneaked a boy into Brianna's bedroom. At the time, the bedroom door was locked. After the door was opened, appellant threw the boy out and sent Brianna's friend home. According to Brianna, she got into a fight with appellant when appellant demanded her cell phone. Brianna then stuffed the phone down her shirt and appellant tried to retrieve the same.  In her written statement to police, Brianna indicated that appellant hit her in the mouth. When asked if the statement was true or false, she testified that appellant had smacked her when she cussed at appellant. Brianna further testified that appellant put one pill in her mouth to calm her after she threatened to kill herself.  When asked about appellant's statement that Brianna had more than one pill in her mouth, Brianna indicated that it was untrue and that appellant had lied in her statement.  Brianna initially denied that she wrote statements indicating that appellant told her  that she would get in trouble if she testified against appellant. However, she later testified that appellant "said that they could bring up more charges" if Brianna testified.  Transcript at 24.

{¶6}  Brianna further testified that appellant covered her mouth so that she could not spit out the pill and that she felt like she could not breathe. According to Brianna, after she went to the hospital, she was told that she only had enough

milligrams in her system for one pill.   Brianna testified that she felt "dizzy and lightheaded" from the medication. Transcript at 42.

**{¶7}**   At trial, appellant testified that, in March of 2009, she was diagnosed with hereditary spasmodic paraplegia and was completely paralyzed for four days. She testified that, on the day in question, after she asked Brianna for the cell phone, Brianna put the phone down her shirt and told appellant that she could not have the same. Brianna then ran downstairs. When appellant locked the front door, Brianna called her a 'fucking bitch" and appellant smacked her in the mouth. Transcript at 71. According to appellant, Brianna then punched her and split open her lip.   Appellant then restrained Brianna on the floor and, after Brianna quit struggling, appellant let her up.   Appellant testified that Brianna then ran upstairs, kicked out her bedroom window and threatened to kill herself.

**{¶8}**   Appellant testified that she started having muscle spasms and that she yelled for her boyfriend to bring her medicine bag because she needed her Ativan. Appellant, who testified that she was a licensed practical nurse, indicated that she was worried that she was going to have a seizure and that, if she did, Brianna would be able to get up and hurt herself. Appellant testified that she then put a one milligram Ativan pill into Brianna's mouth. The following testimony was adduced when appellant was asked if she had indicated that she gave Brianna two pills:

**{¶9}**   "A. Well, what happened was, when I put the Ativan in her mouth she spit it out.   And Ativan, when it is - - when it's put in your mouth, because it can be given sublingual, is where it actually melts in the mouth, it starts to melt.   And she spit it out. And I'm struggling.   And when I went to pick it up it actually had a dog hair on it, you

know, so I got another one and I put it in her mouth.  And then I went to get the bottle of water and when I turned back around she was screaming and I seen she had three in her mouth.  And then I started doing a mouth swab to get them out.  That's how I got the injuries on my fingernails and thumbnails.  She bit through the nails.

**{¶10}** "Q. And those are on the pictures?

**{¶11}** "A. Yeah.  I was doing a mouth swab to get them out.

**{¶12}** "Q. Were you able to get them out?

**{¶13}** "A. The majority of the, yes.  But like I said, they melt pretty quickly.  And I did, there was Ativan I'm sure that was in her system, but I got the majority of it out.  And she had to have put the other pills in her mouth.  And she was screaming that she was going to kill herself."  Transcript at 77-78.

**{¶14}** At the conclusion of the evidence, the trial court found appellant guilty of child endangering, but not guilty of domestic violence.  The trial court, in finding appellant guilty of child endangering, stated, in relevant part, as follows:

**{¶15}** "With regard to the endangering children, there's no question that putting pills in her daughter's mouth, no question prescription medication is probably pretty heavy duty stuff.  The child is only 13, so she might not even need to take that.  It might not be prescribed for her.  The daughter also indicated that she was dizzy after taking the medication. When she was at the Detention Center after the deputies took her there.  The Defendant also testified that she knew she was wrong when she did it and tried to get it out.  And I think [t]he State has proved that case beyond a reasonable doubt and gonna (sic) find her guilty of endangering children."  Transcript at 113-114.

**{¶16}** The trial court also found appellant guilty of disorderly conduct.

{¶17} Pursuant to Judgment Entries filed on October 27, 2011, the trial court sentenced appellant to 60 days in jail with respect to the charge of child endangering. The trial court suspended the jail sentence under specified conditions and ordered appellant to pay a fine of $150.00 and court costs. With respect to the charge of disorderly conduct, the trial court fined appellant $75.00 and ordered her to pay court costs.

{¶18} Appellant now raises the following assignment of error on appeal:

{¶19} "THE TRIAL COURT ERRED BY CONVICTING THE APPELLANT OF CHILD ENDANGERING UPON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶20} Appellant, in her sole assignment of error, argues that her conviction for child endangering was not supported by sufficient evidence and is against the manifest weight of the evidence.  We disagree.

{¶21} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997–Ohio–52, 678 N.E.2d 541, *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks,* supra.

**{¶22}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *Thompkins,* supra at 387, citing *State v. Martin,* 20 Ohio App .3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), syllabus 1.

**{¶23}** Appellant was convicted of child endangering in violation of R.C. 2919.22(A). R.C. 2919.22 states, in relevant part, as follows: "(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support…" A "substantial risk" is "a strong possibility, as contrasted with a remote * * * possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

**{¶24}** Appellant specifically contends that the State failed to present sufficient evidence that ingestion of one Ativan pill created a substantial risk to the health and safety of her daughter. Appellant notes that the only testimony concerning Ativan came from her and that she is a licensed practical nurse with IV certification and has worked

as a psychiatric nurse.  Appellant notes that she testified that she was familiar with Ativan from her nursing and used the drug frequently, particularly while working as a psychiatric nurse. Appellant specifically points to her following trial testimony:

**{¶25}** "Q. What kind of dosage is typical for someone?

**{¶26}** "A. Of her [Brianna's] size and age?

**{¶27}** "Q. Yes.

**{¶28}** "A. A 13-year old weighing 135 pounds, you could go by weight, which is 0.05 milligrams per kilograms of weight, which if you calculate Bri weighs 64.1 kilograms, so it comes out to be three kilograms (sic).  But if you go by the adult dosage, you could give them anywhere from two to six milligrams at one time with the maximum of 10 milligrams per day.  And that's only for anxiety and addiction.  There are not any other uses to the drug.

**{¶29}** "Q. Can you overdose on Ativan?

**{¶30}** "A. Yes, but you would have to take quite a bit, quite a bit of Ativan.

**{¶31}** "Q. How many pills do you think were in her mouth?

**{¶32}** "A. I saw three, but that would be three milligrams which is the correct dosage for, you know, like I said, if you go by her weight.  If you go by she's not considered with intents and purposes as an adult, she could have had more.

**{¶33}** "Q. Three milligrams cause her physical harm?

**{¶34}** "A. No.  No.  It would have just calmed her down."  Transcript at 79-80.

**{¶35}** According to appellant, these statements were not challenged by appellee on cross-examination or by any other witness.

{¶36} Upon our review of the evidence, we find that any rational trier of fact, construing the evidence in appellant's favor, could have found that appellant committed the offense of child endangering and that the trial court, as trier of fact, did not lose its way in convicting appellant. As is stated above, there was testimony that appellant, who is not a doctor, gave her daughter Ativan to try and calm her down. The Ativan had been prescribed for appellant, not for her daughter. Appellant testified that she knew that it was wrong to give Ativan to someone who does not have a prescription and that she wished that she had not done it. As is stated above, Brianna testified that she felt "dizzy and lightheaded" from the medication. Transcript at 42.

{¶37} While there was no medical testimony regarding the risks of Ativan, as noted by the court in *State v. Hartley*, 194 Ohio App.3d 486, 2011-Ohio-2530, 957 N.E.2d 44 (1st Dist.), expert medical testimony is not required where the creation of a risk to health or safety is within common knowledge. It is common knowledge that administration of a prescription drug to a child who has not been prescribed the same may cause an overdose and does not consider contraindication. See *Hartley*, supra. While appellant, as a nurse, may have been familiar with Ativan, she lacked the medical knowledge to adequately consider all of the factors that a physician would consider in prescribing medication to a person, especially a child. It is common knowledge that certain drugs require prescriptions, as opposed to being available over the counter, because of the risks that are inherent in such drugs.

**{¶38}** Based on the foregoing, we find that the evidence supported a finding that appellant's act created a strong possibility of harm to the health or safety of her daughter.  Appellant's sole assignment of error is, therefore, overruled.

**{¶39}** Accordingly, the judgment of the Coshocton Municipal Court is affirmed.

By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d0711

[Cite as *State v. Clark*, 2012-Ohio-4776.]

IN THE COURT OF APPEALS FOR COSHOCTON COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MELISSA CLARK | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011CA017 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Coshocton Municipal Court is affirmed.  Costs assessed to appellant.

_____

_____

_____

JUDGES